# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

82 Glenwood Ave LLC,
    A New York LLC.

    *Plaintiff.*

v.

NOLAN SCHUTZE,
    An individual;

BHL CAPITAL LLC,
    A Texas LLC;

DAVID KANE,
    An individual;

EVAN LIPP,
    An individual;

KANE TITLE LLC,
    A Texas LLC;

    *Defendants*.

Case No. 23-cv-2231

Hon.  Karen Gren Scholer

_____/

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff 82 Glenwood Ave LLC, by and through counsel, Craig L. Uhrich and Keana T. Taylor of UPSHAW PLLC, and Solomon M. Radner of RADNER LAW GROUP, PLLC, complaining of Defendants, and respectfully alleges:

1

## JURISDICTION AND VENUE

1.    This is a breach of contract/breach of fiduciary duty action, coupled with a negligence action, in which the Plaintiff and Defendants have complete diversity.

2.    The amount in controversy exceeds $75,000.00.

3.    The facts and circumstances upon which this action is based, all happened within this Court's district.

4.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    Venue is thus properly laid in the Northern District of Texas under 28 U.S.C. § 1391(b)(2).

## INTRODUCTION

6.    This action involves the attempted sale and purchase of a property located in Travis County, Texas located at 601 Rio Grande St, Austin, TX 78701 (the "Subject Property"). This purchase required multiple entities to be involved.

## PARTIES AND RELEVANT NON-PARTIES

7.    Non-Party WC 6th & Rio Grande LP ("WC") is a Texas LP organized in the State of Texas and is the original owner and seller of the Subject Property.

8.     Defendant BHL Capital LLC ("BHL") is a Texas LLC and is owned by Defendant Nolan Schutze ("SCHUTZE"), a Texas resident, based in Dallas. BHL is the original purchaser of the Subject Property. BHL and Schutze will be referred to jointly herein as the Schutze Defendants. BHL and Schutze are both residents and citizens of the State of Texas.

9.     Defendant BHL did not have sufficient capital to complete the purchase, so Defendant BHL assigned its rights as Purchaser of the Subject Property to a newly formed entity, non-party 601 Rio LLC.

10.    Non-party 601 Rio LLC is a Texas LLC and is owned 50% by BHL Capital and 50% by Plaintiff 82 Glenwood Ave LLC, a New York LLC.

11.    Plaintiff 82 Glenwood Ave LLC is owned by CJI Trading LLC, a New York LLC; the Mermelstein brothers, specifically Eli and Avram Mermelstein, are actual agents and the sole owners of CJI and of Plaintiff 82 Glenwood. The Mermelstein Brothers are both residents and citizens of the state of New York.

12.    Non-party Hudson Valley Acquisitions3 LLC is a limited liability company organized in the state of New York and owned by the Deraaff Brothers.

13.    Defendant Kane Title LLC, a Dallas, Texas LLC, is owned, operated, and managed by Defendant Evan Lipp and/or Defendant David Kane.

14.    Evan Lipp and David Kane are residents and citizens of the State of Texas.

15.  Defendant Kane Title LLC is a Texas LLC and, through Evan Lipp and/or David Kane, was the escrow agent for the purchase of the subject property. The Kane defendants are all citizens and residents of the State of Texas.

16.  Defendants Kane Title LLC, Lipp, and/or Kane owed and breached a fiduciary duty owed to Plaintiff.

17.  Plaintiff, by and through its agents, had adequate contact and correspondence with Kane and/or Lipp and/or Kane Title LLC to establish that Kane and/or Lipp and/or Kane Title LLC would be taking custody and control of Plaintiff's funds for the purpose of consummating a very specific real estate transaction, around which this action revolves. Kane and/or Lipp and/or Kane Title LLC acknowledged this in writing.

18.  David Kane and Evan Lipp and Kane Title LLC will be referred to herein jointly as the Kane Defendants.

## STATEMENT OF FACTS

19.  On February 15, 2023, Defendant Schutze, acting as agent for BHL, entered into a purchase agreement to purchase the subject from WC for the price of $20,000,000.00.

20.  The contract for the subject property required a $3,000,000.00 earnest deposit to be deposited with Defendant Evan Lipp, an escrow agent at Defendant Kane Title LLC 5301 Village Creek Dr. Suite A, Plano Texas 75093.

21.  BHL did not have sufficient funds to complete the purchase, so BHL asked the Deraaff Brothers for assistance in funding the deal.

22.  The Deraaff Brothers made contact with the Mermelstein Brothers, and an agreement was reached wherein the Mermelstein Brothers, through CJI Trading LLC, would provide the capital to finalize the deal, to wit $3,000,000.00 in cash.

23.  To enable the parties to finalize this purchase, two new entities were formed:

a.  On or about February 13, 2023, Plaintiff 82 Glenwood Ave LLC was formed as a partnership between 1) the Deraaff Brothers' company, i.e. Hudson Valley Acuiisitoins3, LLC, and 2) the Mermelstein Brothers' company, i.e. CJI Trading LLC.

b.  On or about February 13, 2023, 601 Rio LLC was formed as a partnership between BHL Capital and Plaintiff 82 Glenwood Ave, LLC; an assignment of sale was also executed between BHL Capital and 601 Rio LLC in which BHL Capital assigned its rights as purchaser of the subject property to 601 Rio LLC.

24.  601 Rio LLC, as per its operating agreement, is owned as follows:

i.  50% by BHL Capital LLC

ii.  50% by Plaintiff 82 Glenwood Ave LLC

25. In Paragraph 9 of the operating agreement for 601 Rio LLC, 82 Glenwood Ave LLC was to finance the downpayment under the contract of sale to purchase the subject property, in the amount $3,000,000.00.

26. On Feb. 13, 2023 at 3:59 PM, Nolan Schutze emailed Mr. Lipp and introductory email, introducing Mr. Lipp to Mr. Schutze's "partners on the deal" which included Austin Deraaff, Jake Deraaff, Evan Mizrahi, and cwaldorf@trinitygrovelaw.com[1]. This email reads as follows:

**From:** Nolan Schutze <nolan@bhlcapital.io>
**Sent:** Monday, February 13, 2023 3:59 PM
**To:** Evan Lipp <evan@kanetitlellc.com>
**Cc:** Austin Deraaff <austin@raven3.com>; Jake Deraaff <jake@raven3.com>; Evan Mizrahi <evan@raven3.com>; cwaldorf@trinitygrovelaw.com
**Subject:** 6th and Rio Grande

Evan,

I wanted to send an introduction email to you regarding the Austin deal at 6th and Rio. Please meet Jake & Austin Deraaff and Evan Mizrahi, my partners on the deal.

Per our conversation, BHL Capital LLC will be purchasing the property at 601 Rio Grande St from World Class. BHL Capital will then assign the contract to 601 Rio LLC (our newly formed entity). From there 601 Rio LLC will sell the property to Urbana, utilizing a double close.

I will be sending company documents shortly along with contracts.

Thanks,

Nolan

---

[1] This turned out to be a non-existent fraudulent person/entity, created by Mr. Schutze in furtherance of his scheme to steal Plaintiff's $3,000,000.00.

27. Defendant Lipp replied on Feb. 15, 2023 at 5:50 PM, as follows:

**From:** Evan Lipp <evan@kanetitlellc.com>
**Sent:** Monday, February 13, 2023 5:05 PM
**To:** Nolan Schutze <nolan@bhlcapital.io>
**Cc:** Austin Deraaff <austin@raven3.com>; Jake Deraaff <jake@raven3.com>; Evan Mizrahi <evan@raven3.com>; cwaldorf@trinitygrovelaw.com <cwaldorf@trinitygrovelaw.com>
**Subject:** RE: 6th and Rio Grande

Nolan,

Thanks for the introduction to your partners. We look forward to working with you on another transaction.

As usual, I'm available by email or phone should anyone have any questions along the way.

Thanks,

Evan

28. Defendant Schutze replied all on Feb. 14, 2023 at 8:41 AM, as follows:

**From:** Nolan Schutze <nolan@bhlcapital.io>
**Sent:** Tuesday, February 14, 2023 8:41 AM
**To:** Evan Lipp <evan@kanetitlellc.com>
**Cc:** Austin Deraaff <austin@raven3.com>; Jake Deraaff <jake@raven3.com>; Evan Mizrahi <evan@raven3.com>; cwaldorf@trinitygrovelaw.com
**Subject:** Re: 6th and Rio Grande

Evan,

Can you review this contract for the back side of this deal before I send out for execution?

I need to confirm the Section 12: Special Provisions.

"Upon close of the Feasibility Period, the escrow agent shall use the first $3,000,000 of Buyer's donwpayment to replace the Seller's donwpayment under its contract with the current owner of the Property."

Want to make sure that once the feasibility period (45 days) is over that their money would go hard and can replace our money in the front side contract.

-Nolan

29.  Also on Feb. 14, 2023 at 11:55 AM, Defendant Lipp then replied as

follows:

> On Tue, Feb 14, 2023 at 11:55 AM Evan Lipp <evan@kanetitlellc.com> wrote:
>
> Nolan,
>
> After reviewing your attached draft contract, I would interpret Section 12 as you do.  On day 46, the feasibility period would be over and, per the instructions in the special provisions, $3,000,000 would be credited as the sellers funds.
>
> Thanks,

30.  Prior to wiring any funds to the defendants, Evan Mizrahi then emailed

Defendant Lipp, still cc'ing everybody, on Feb. 14, 2023 at 11:16 AM, as follows:

**From:** Evan Mizrahi <evan@raven3.com>
**Sent:** Tuesday, February 14, 2023 11:16 AM
**To:** Evan Lipp <evan@kanetitlellc.com>
**Cc:** Nolan Schutze <nolan@bhlcapital.io>; Austin Deraaff <austin@raven3.com>; Jake Deraaff <jake@raven3.com>; cwaldorf@trinitygrovelaw.com
**Subject:** Re: 6th and Rio Grande

Evan,

I just wanted to be sure- we are looking to get a refund of our $3,000,000 on day 46 once the buyers donwpayment goes hard and is used to replace our down payment with the current owner. Can you confirm that we would receive a wire of $3,000,000 back on day 46 (of course assuming the buyer does not cancel)?

Thanks,

Evan

31.  Defendant Lipp replied to that email less than two hours later, on Feb.

14, 2023 at 12:48 PM, as follows:

On Tue, Feb 14, 2023 at 12:48 PM Evan Lipp <evan@kanetitlellc.com> wrote:

> Evan,
>
> The draft contract Nolan previously sent was on the standard TAR – Commercial Contract form.  The job or purpose of an escrow agent is to act as a neutral third party and not to interpret the contract, but rather to follow the instructions of the contract.  In my opinion, I would agree with you and Nolan in that the $3,000,000 would be released once the feasibility period ends or if the contract were to cancel.
>
> Thanks,
>
> Evan

32.    Thus from this email exchange alone, it became clear that Plaintiff was Mr. Schutze's partners on the deal, and that the funds being wired to Defendants, and to whom Defendants would owe a duty, was someone other than Defendant Schutze. Plaintiff, through Evan Mizrahi even confirmed that Plaintiff would be wiring funds to Defendants and that those funds were to be returned to the plaintiff in the event the deal did not close, which Defendant Lipp confirmed.

33.    In reasonable reliance on the assurances contained in these emails, the funds were wired from Plaintiff to the Kane Defendants the very next day.

34.    Within a half hour of the funds being received by Defendants, Mr. Schutze emailed Defendant Lipp, ***suddenly with nobody cc'ed***, and requested a refund of the funds less Defendants' 2.5% fee. However, he requested that the refund be sent to him instead of to the original payor.

35.    Without asking a single follow-up question of Evan Mizrahi or anyone else from whom the Kane Defendants received these funds, the Kane defendants immediately released the funds to Mr. Schutze, who then stole and converted those

funds for his own personal use. This information was not known to Plaintiff until months later, as will be explained herein. However, the Kane defendants were first sure to take their 2.5% fee, totaling $75,000.00, to which they somehow felt entitled.

36. As originally agreed, on or about March 30, 2023, Mr. Avraham Mermelstein authorized agent of Plaintiff 82 Glenwood Ave, LLC and CJI, began requesting the return of that $3,000,000.00.

37. In an effort to avoid involving lawyers and Courts, Plaintiff emailed Defendants and Schutze incessantly demanding a refund.

38. Finally, April 2, 2023, Defendant Lipp sent an email as follows:

On Apr 2, 2023, at 4:47 PM, Evan Lipp <evan@kanetitlellc.com> wrote:

Nolan,

As you know, I received several calls and emails from multiple parties on Friday claiming to be part of the deal for 601 Rio Grande St. I don't have an operating agreement for the entity that is purchasing the property. I don't know who can sign for the company or even who the members are. I am not releasing any funds to anyone until I have a clear understanding of who can sign for the company and who the members are. I'm really not comfortable discussing the details of the deal until I know who I'm talking to. Please relay this message to any and all parties that are involved so we can prevent what happened on Friday with the frantic back to back phone calls and emails.

Thanks,
Evan

39. Plaintiff, relieved that the funds were still safely in the Kane Defendants' escrow and not going anywhere, retained counsel and initiated an action

against Defendants as well as against BHL and Schutze in the New York Southern District. Case Number 7:23-cv-4192 filed on May 19, 2023; that case was voluntarily dismissed without prejudice on July 31, 2023.

40.   While that action was pending, Plaintiff learned that Defendant Lipp's email, specifically "I am not releasing any funds to anyone until I have a clear understanding…" was categorically false and that in reality Defendant had released the funds to Schutze back in February – within 30 minutes of receiving it from Plaintiff – ***after*** deducting its 2.5% fee.

41.   Plaintiff resolved its claim with Schutze and BHL by way of settlement agreement, but Schutze and BHL have since breached that agreement as well.

42.   The terms of that agreement were outlined in an email between Plaintiff's counsel and the Schutze Defendants' counsel, Jules Slimm as follows:

Solomon Radner <solomon@radnerlawgroup.com>                                           Sun, Jun 25, 5:15 PM      ☆      ↰      ⋮
to jslim ▾

Good afternoon Jules

I hope you are well.

I have been discussing a reasonable proposal with my clients, and they are digging in their heels. They are aware that they are in the drivers seat, given that they could quite easily get a very quick judgment against Mr. Schutze. They are prepared to settle with the following terms, and they don't seem to be willing to budge on any of them. My marching orders are to settle according to these terms or get a judgment and do what's necessary to collect.

1. 60 days to get us $3.5 million (for actual costs and losses thus far)
2. Pocket Judgment for 6 million (which is a discount from the 9 million we could likely get with treble damages)
3. liens against all properties or assets that can be placed now assuming he has some sort of collateral
4. the $3.5M must come to us straight from Jules' IOLTA with letter from Jules stating they are "clean" funds
5. The pocket judgment must include admission of liability and necessary language to render the judgment non-dischargeable in BK.

If these terms are acceptable, I will dismiss BHL and Schutze without prejudice while we finalize the language. The 60 days however start from the say we agree.

Please let me know.



**Solomon Radner** <solomon@radnerlawgroup.com>
to jslim

Wed, Jul 5, 2:32 PM

Jules,

I hope you are well.

Please confirm that these terms are acceptable and I can then dismiss the case immediately, without prejudice obviously.

We can finalize settlement docs but that will obviously take time. With these terms though, I feel comfortable dismissing, because I am confident we will agree on the final docs.

The 60 days would have been from June 25 but let's just make the due date August 31 for simplicity sake.

Thanks.

**Solomon Radner**                                                                                    Mon, Jul 10, 4:51 PM
We good? On Jul 5, 2023, at 2:32 PM, Solomon Radner <solomon@radnerlawgroup.com> wrote:

**Jules Slim, Attorney** <jslim@slimlawfirm.com>                                      Mon, Jul 10, 5:15 PM
to me

Yes, but as you say, subject to review of the final docs.

Jules P. Slim, Attorney
PO Box 140307
Irving, TX 75014-0307
(214) 350-5183 office
(214) 350-5184 fax
(214) 682-2495 mobile
jslim@slimlawfirm.com

43. While the email refers to "final docs," which have still not been finalized, there is clearly a mutual meeting of the minds about the material terms of the settlement agreement, which Schutze and BHL have obviously breached.

### COUNT 1: Breach of Contract / Implied Contract
*(Against Defendants David Kane, Evan Lipp, and Kane Title LLC)*

44. Plaintiff incorporates by refence all prior paragraphs.

45. There existed a meeting of the minds, proven by the herein copied emails, documenting under what terms the plaintiff would wire funds to the Kane defendants.

46. That meeting of the minds constituted an agreement among the parties that Plaintiff would wire the funds to the Kane Defendants, who would hold the funds and eventually return them to Plaintiff – ___*not to Schutze or BHL*___.

47. In blatant violation of this written agreement, the Kane Defendants released the funds, less their 2.5% fee, to Mr. Shcutze within 30 minutes of receiving them, thereby breaching the contract and harming Plaintiff.

48. Plaintiff 82 Glenwood Ave, LLC complied with the contract and is free from any wrongdoing.

49. In the alternative, there existed an implied contract.

50. An implied contract exists when the facts and circumstances show a mutual intention to contract, that is, a meeting of the minds. The determination of whether there is a meeting of the minds must be based upon objective standards of the parties' actions, not on their alleged subjective states of mind.

51. As is outlined herein, when Plaintiff's agent, Mr. Mizrahi, emailed the Kane Defendants, specifically Defendant Evan Lipp to confirm that Plaintiff's funds would be safe and would eventually be returned to Plaintiff.

52. The Kane Defendants even assured Plaintiff, and Plaintiff reasonably relied upon that assurance.

53. The Kane Defendants breached this contract or this implied contract and Plaintiff suffered damages as a direct and foreseeable result.

## COUNT 2: Breach of Fiduciary Duty
### *(Against Defendants David Kane, Evan Lipp, and Kane Title LLC)*

54.   Plaintiff incorporates by refence all prior paragraphs.

55.   Plaintiff reposed faith, confidence, and trust in Defendant David Kane and Kane Title, LLC's judgment and advice.

56.   The Kane Defendants betrayed the confidence Plaintiff placed in them by releasing the funds entrusted to them without authorization to BHL Capital, LLC or an unknown third party.

57.   A fiduciary relationship exists when a party is are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship.

58.   Further, an "informal fiduciary relationship" exists where influence has been acquired and abused, and confidence has been reposed and betrayed. As is articulated herein, the Kane Defendants through their emails and assurances, acquired and subsequently abused and betrayed, the trust of Plaintiff.

59.   As is articulated herein, there existed a fiduciary duty, (2) there was a breach of that duty, (3) that breach caused Plaintiff's damages.

60.   The Kane Defendants were thus acting as a fiduciary of Plaintiffs.

61.   The Kane Defendants breached the fiduciary duty owed to Plaintiff.

62.   Plaintiff suffered damages as a result of the breach.

63. The Kane Defendants' breach of fiduciary duty caused Plaintiff's damages. Simply put, had Defendants not released Plaintiffs' funds to Schutze, Plaintiff would not have suffered damages.

64. Plaintiff suffered an immediate out of pocket loss in the amount of

65. $3,000,000.00 as well as lost profits, and other investment opportunities as a direct and foreseeable result of Defendants' unauthorized release of Plaintiffs' funds. complaint.

## COUNT 3: Negligence
### *(Against Defendants David Kane, Evan Lipp, and Kane Title LLC)*

66. Plaintiff incorporates by refence all prior paragraphs.

67. The Kane Defendants owed a duty to the plaintiff to act reasonably and with due care after taking control of Plaintiff's funds.

68. The Kane Defendants knew or should have known that there is a standard of due care that comes with being an escrow agent – the Kane Defendants presumably were at all time aware of this standard, and replied upon it in justifying their 2.5% fee for having control of the funds for so short a period of time.

69. The Kane Defendants breached that duty when, less than an hour after receiving the funds from Plaintiff, they released those same funds to Schutze, as is articulated herein in detail, without asking Mr. Mizrahi a single question.

70. The Kane Defendants' negligence directly and foreseeably caused Plaintiff's damages.

## COUNT 4: Breach of Contract/Implied Contract
### *(Against Defendants BHL and Schutze)*

71.   Plaintiff incorporates by refence all prior paragraphs.

72.   As is clear from the emails that are included herein, there was a mutual meeting of the minds, documented by email communications, which laid out the material terms of an agreement between the Schutze Defendants and Plaintiff.

73.   An implied contract exists when the facts and circumstances show a mutual intention to contract, that is, a meeting of the minds. The determination of whether there is a meeting of the minds must be based upon objective standards of the parties' actions, not on their alleged subjective states of mind.

74.   At the very least, there existed an implied contract based on these emails and the subsequent dismissal of the New York action.

## COUNT 5: Common Law Fraud
### *(Against Defendants BHL and Schutze)*

75.   Plaintiff incorporates by refence all prior paragraphs.

76.   A cause of action for common-law fraud exists because the Schutze Defendants made a representation to a plaintiff that was both material and false. Specifically, the Schutze Defendants tricked Plaintiff into wiring $3,000,000.00 to the Kane Defendants for the purposes of consummating a real estate transaction that the Schutze Defendants was not real.

77.  Further, the Schutze Defendants knew their statements were false when making them.

78.  Further, the Schutze Defendants made such misrepresentations with the intent that the plaintiff act on it, and the plaintiff did in fact rely on it when wiring $3,000,000.00 to the Kane Defendants, thereby suffering harm as a direct and foreseeable result.

## COUNT 6: Statutory Fraud
### *(Against Defendants)*

79.  Plaintiff incorporates by refence all prior paragraphs.

80.  Statutory fraud exists when a defendant makes a material and false representation in a real estate transaction for the purpose of inducing the plaintiff to enter into a contract.

81.  The Schutze Defendants tricked Plaintiff into wiring $3,000,000.00 to the Kane Defendants for the purposes of consummating a real estate transaction that the Schutze Defendants was not real.

82.  Plaintiff subsequently learned from Mr. Schutze and/or his agent that there never was a deal and that it was concocted to steal the funds from Plaintiff.

83.  The Schutze Defendants made such misrepresentations with the intent that the plaintiff act on it, and the plaintiff did in fact rely on it when wiring $3,000,000.00 to the Kane Defendants, thereby suffering harm as a direct and foreseeable result.

## COUNT 7: Deceptive Trade Practices
### *(Against Defendant Nolan Schutze)*

84. Plaintiff incorporates by refence all prior paragraphs.

85. In Texas, a person commits the offense of deceptive trade practices if in the course of business, he intentionally, knowingly, recklessly, or with criminal negligence represents that a commodity or service is of a particular style, grade, or model when it is of another.

86. In the instant action, Defendant Nolan Schutze certainly committed such an offense when he:

    a. tricked Plaintiff into believing there was a real estate transaction for which Schutze needed to borrow funds from Plaintiff;

    b. tricked Plaintiff into wiring funds to the Kane Defendants for a transaction that Schutze knew was not real;

    c. contacted the the Kane Defendants to tell them that the dela, which Schutze knew never existed, was dead;

    d. tricked the Kane Defendants into releasing Plaintiff's funds to Schutze;

    e. Continued to trick Plaintiff into believing that he was diligently working on getting Plaintiff's funds returned to Plaintiff from the Kane Defendants, despite knowing that the funds had already been stolen by Schutze himself months earlier.

87. Plaintiff suffered damages as a direct result.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment and prays for the following

relief, against Defendants:

    a.  Full and fair compensatory damages to be determined by a jury;

    b.  Exemplary damages in an amount to be determined by a jury;

    c.  Punitive damages in an amount to be determined by a jury;

    d.  Reasonable attorney's fees and the costs of this action; and

    e.  Any such other relief as appears just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to

1) Fed. R. Civ. P. 38(b).


DATED: November 1, 2023    Respectfully Submitted,

    */s/ Keana Taylor*
    Keana Taylor
    Texas Bar No. 24042013
    keanataylor@upshawpllc.com
    (713) 299-6404

    Craig Uhrich
    craig.uhrich@gmail.com
    Texas Bar No. 24033248
    (785) 671-1237

    Upshaw PLLC
    1001 Belleview St. #608
    Dallas, TX 75215-1831

/S/ Solomon M. Radner
Solomon M. Radner (*pro hac* to be applied for)
RADNER LAW GROUP, PLLC
*Pro Hac* to Be Applied For
Attorney for Plaintiff
17515 West 9 Mile Rd, Ste 1050
Southfield, MI 48075
T: (877) 723-6375
F: 866-571-1020
solomon@radnerlawgroup.com