# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| 82 GLENWOOD AVE LLC | § |
| | § |
| v. | §   CIVIL ACTION NO. 3:23-CV-2231-S |
| | § |
| DAVID KANE, EVAN LIPP, and KANE TITLE LLC | § |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants David Kane's and Kane Title LLC's Second Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Kane Motion") [ECF No. 62] and Defendant Evan Lipp's Third Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Lipp Motion") [ECF No. 63] (together, "Motions"). The Court has reviewed the Motions, Plaintiff's Response to the Kane Motion and the Lipp Motion ("Combined Response") [ECF No. 65], Defendant Evan Lipp's Reply to the Combined Response ("Lipp Reply") [ECF No. 66], Defendants David Kane's and Kane Title LLC's Reply to the Combined Response ("Kane Reply") [ECF No. 67], and the applicable law. For the following reasons, the Court **GRANTS** the Motions.

## I. BACKGROUND

This case arises from a real estate transaction that fell apart after one of the buyers allegedly stole the earnest money put into escrow by Plaintiff 82 Glenwood Ave LLC. Pl.'s Third Am. Compl. [ECF No. 60] ¶¶ 22-23, 37. Plaintiff alleges that it agreed to work together on the deal with former defendants[1] BHL Capital LLC and Nolan Schutze, owner of BHL. *Id.* ¶¶ 6, 8, 19. Plaintiff was formed to provide funds to finalize the purchase. *Id.* ¶¶ 23-25. Defendant Evan Lipp, an escrow agent at Defendant Kane Title LLC, was to receive an earnest money deposit of

---

[1] Plaintiff settled its claims against BHL Capital LLC and Schutze. *See* ECF No. 20.

$3 million. *Id.* ¶ 20. Plaintiff alleges that, based on a series of emails, Plaintiff understood that the money would be returned to it after 45 days or if the deal fell through. *Id.* ¶¶ 26-32. Plaintiff wired the money to Lipp at Kane Title to be held in escrow. *Id.* ¶ 34. According to Plaintiff, Schutze almost immediately asked Lipp to release the funds to him. *Id.* ¶ 36. Defendants released the funds, less their $75,000 fee, to Schutze, who allegedly "stole and converted those funds for his own personal use." *Id.* ¶ 37. Plaintiff sued Defendants David Kane, Evan Lipp, and Kane Title LLC for breach of contract, breach of fiduciary duty, negligence, and promissory estoppel. *Id.* ¶¶ 46-89. Defendants now move to dismiss for failure to state a claim. *See generally* Mots.

## II. LEGAL STANDARD

To survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The court does not, however, accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). At the motion-to-dismiss stage, the court does not evaluate the plaintiff's likelihood of success but determines only whether the plaintiff has

stated a claim upon which relief can be granted. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

## III. ANALYSIS

Defendants Lipp, Kane, and Kane Title argue that the claims against Lipp and Kane should be dismissed because Plaintiff makes no specific allegations against either individual defendant and that each claim should be dismissed because there is no contract between them and Plaintiff; they owed no fiduciary duty to Plaintiff; they owed no duty of care to Plaintiff; and they made no promises to Plaintiff. Kane Mot. 2-3; Lipp Mot. 2-3. The Court addresses the two Motions together because they advance similar arguments and because Plaintiff filed a single, consolidated response to the Motions.

### *A. Individual Allegations*

Lipp and Kane argue that the claims against them should be dismissed because the operative complaint includes no specific allegations about the conduct of either defendant. Instead, it refers to Lipp, Kane, and Kane Title collectively as "the Kane Defendants." *See* Third Am. Compl. ¶ 18.

If Plaintiff had sued Lipp, Kane, and Kane Title for fraud, that so-called "group pleading" would be fatal to its claims. *See Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015). But that is because fraud claims are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to plead the "who, what, when, where, and how of the alleged fraud." *United States of Am. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 762 (5th Cir. 2025). Plaintiff settled its fraud claims against BHL and Schutze, *see* ECF No. 20, and the operative complaint contains no fraud claims against the remaining Defendants. *See* Pl.'s Third Am. Compl. ¶¶ 46-89. Plaintiff's remaining claims are governed by the more lenient Rule 8

3

pleading standard, which requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

The operative complaint names David Kane as a defendant, states that Kane Title is "owned, operated, and/or managed by" Kane, Pl.'s Third Am. Compl. ¶ 13, and states that Kane Title "through . . . David Kane[] was the escrow agent for the purchase of the subject property," *id.* ¶ 15. But nowhere in the complaint does Plaintiff allege that Kane did anything that would give rise to Plaintiff's claims against him. Plaintiff's Response suggests that Kane may be held vicariously liable for Lipp's conduct as Lipp's employer because "it is impossible . . . to know exactly where Kane Title ends and where Mr. Kane begins."[2] Resp. 9-10. The complaint, however, alleges no facts to suggest that Kane personally employed Lipp. Instead, Plaintiff alleges that both Kane and Lipp "owned, operated, and/or managed" Kane Title. Pl.'s Third Am. Compl. ¶ 13. Without allegations of specific facts linking Kane to the claims alleged, the complaint fails to state a claim against Kane.

The operative complaint, however, contains numerous allegations about Lipp's conduct. The Court therefore considers the sufficiency of those allegations to state each claim pleaded.

### *B. Breach of Contract*

To state a claim for breach of contract, the plaintiff must plead "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co.*

---

[2] This statement suggests a veil-piercing or alter-ego theory to impose liability on Kane, but Plaintiff's operative complaint pleads no facts to support such a theory. *See Castleberry v. Branscum*, 721 S.W.2d 270, 275 n.5 (Tex. 1986) ("Each basis for disregarding the corporate fiction should be pleaded separately."); *Capital Parks, Inc. v. Se. Advert. & Sales Sys., Inc.*, 30 F.3d 627, 630 (5th Cir. 1994) (affirming dismissal of a veil-piercing theory on a Rule 12(b)(6) motion).

*v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). To establish the existence of a valid contract, the plaintiff must plead that "(1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding." *Id.* "Under Texas law, the elements of a contract, express or implied, are identical." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015) (cleaned up). A meeting of the minds may be shown by the parties' "conduct and course of dealing," and the "essence" of that element is "consent to be bound." *Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal Dist.*, 691 S.W.3d 890, 901 n.7 (Tex. 2024). A meeting of the minds requires that "[a]ll of the parties must assent to the same thing in the same sense at the same time, and their assent must comprehend the proposition as a whole." *Crowell v. CIGNA Group Ins.*, 410 F. App'x 788, 792 (5th Cir. 2011).

Defendants argue that no contract exists between them and Plaintiff. Kane Mot. 8; Lipp Mot. 8. Plaintiff responds that a string of emails and a signed escrow receipt establish that a binding contract was formed. Combined Resp. 4-6. The emails reflect a conversation that included the following senders and recipients: Nolan Schutze, owner of BHL Capital, *see* Pl.'s Third Am. Compl. ¶ 8; Defendant Evan Lipp, owner of Kane Title, *see id.* ¶ 13; Austin Deraaff and Jake Deraaff, owners of nonparty Hudson Valley Acquisitions3 LLC, *see id.* ¶ 12; Evan Mizrahi, an agent of Plaintiff, *see id.* ¶ 56; and "cwaldorf@trinitygrovelaw.com," an address that Plaintiff alleges is associated with a fraudulent entity, *id.* ¶ 26 n.1.

The emails are reproduced in the operative complaint; they are summarized as follows:

**Email 1:** Schutze tells Lipp "Per our conversation, BHL Capital LLC will be purchasing the property" and indicates that he "will be sending company documents shortly along with contracts." *Id.* ¶ 26. Schutze introduces the Deraaffs and Mizrahi as "my partners on the deal." *Id.*

**Email 2:** Lipp thanks Schutze and says he is looking forward to working with him on the transaction. *Id.* ¶ 27.

**Email 3:** Schutze asks Lipp to "review this contract" before he "send[s] it out for execution." *Id.* ¶ 28. Schutze specifically asks for clarification of "Section 12: Special Provisions" to confirm that it means that "once the feasibility period (45 days) is over that their money would go hard and can replace our money in the front side contract." *Id.* The operative complaint does not quote from or attach the contract referred to in this email.

**Email 4:** Lipp responds that "[a]fter reviewing your attached draft contract," he would interpret it as Schutze does. *Id.* ¶ 29.

**Email 5:** Mizrahi asks Lipp "Can you confirm that we would receive a wire of $3,000,000 back on day 46 (of course assuming the buyer does not cancel)?" *Id.* ¶ 30.

**Email 6:** Lipp responds that the "draft contract [Schutze] sent was on the standard TAR – Commercial Contract form." *Id.* ¶ 31. He explains that "[t]he job or purpose of an escrow agent is . . . not to interpret the contract, but rather to follow the instructions of the contract. In my opinion, I would agree with you and [Schutze] in that the $3,000,000 would be released once the feasibility period ends or if the contract were to cancel." *Id.*

Plaintiff asserts that, based on that email conversation, "Plaintiff, through Evan Mizrahi even confirmed that Plaintiff would be wiring funds to Defendants and that those funds were to be returned to the plaintiff in the event the deal did not close, which Defendant Lipp confirmed." *Id.*

¶ 32. But that is not what the emails establish. The emails laid out in the complaint outline a conversation about how Schutze, Lipp, and Mizrahi understood a separate, written contract that was apparently attached to one of the emails. Plaintiff does not allege any additional facts that, together with those emails, would establish an offer, acceptance, a meeting of the minds as to the terms of a contract, or a consent to be bound by a contract.

Nothing in the emails suggests that Lipp intended to be bound to an agreement with Plaintiff. Plaintiff is nowhere mentioned in the emails, nor does Mizrahi identify himself as Plaintiff's agent. Schutze identifies Mizrahi only as a "partner[] on the deal." *Id.* ¶ 26. Even Mizrahi's email address, evan@raven3.com, does not associate him with Plaintiff. *Id.* Without any allegation that Lipp intended to agree to terms with Plaintiff, there can be no meeting of the minds. Further, Lipp's statements in the last email show that he had no intent to bind himself or Kane Title to any contract. *See id.* ¶ 31. Lipp disclaims any responsibility for interpreting the contract discussed in the email and then presents his opinion of its meaning. *Id.* That expression of opinion does not evince any intent to form a separate contract.

Plaintiff's complaint relies on the text of the emails and includes no other allegations about Lipp's conduct that would demonstrate a meeting of the minds or an intent to be bound. For that reason, Plaintiff fails to state a claim for breach of contract, and that claim must be dismissed.

### C. Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty are "(1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). The duties owed by an escrow holder are the duty of loyalty, the duty of full disclosure, and the duty "to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it." *Boozer v. Fischer*,

674 S.W.3d 314, 327 (Tex. 2023). Those duties arise even when a title company holds funds on behalf of a purchaser in the absence of a formal escrow agreement. *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969).

Plaintiff alleges that Defendants breached their fiduciary duties by releasing Plaintiff's $3 million to Schutze and BHL Capital without authorization. Pl.'s Third Am. Compl. ¶¶ 37, 68. Defendants argue that they owed no fiduciary duties because there was no written escrow agreement and because Plaintiff was neither a buyer nor a seller in the underlying transaction. Kane Mot. 13; Lipp Mot. 11. Defendants are correct that Plaintiff has not pleaded the existence of a written escrow agreement. *See supra* Part B. A written agreement, however, is not necessary to impose fiduciary duties on a title company holding a purchaser's funds. *Pippen*, 439 S.W.2d at 665. But Plaintiff does not allege that it was a purchaser or dispute Defendants' argument that it only provided earnest money for a transaction to which it was not a party. In the absence of a formal relationship that gives rise to fiduciary duties as a matter of law, such as an escrow agreement, the court may only impose such duties in business transactions if a "special relationship of trust and confidence . . . exist[s] prior to, and apart from, the agreement made the basis of the suit." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). Plaintiff alleges no facts to suggest the existence of a special relationship between it and Lipp or Kane Title prior to the transaction that gave rise to this suit. In fact, the first email included in the complaint suggests that Mizrahi, Plaintiff's agent, had no relationship to Lipp before Schutze introduced them by email. Pl.'s Third Am. Compl. ¶ 26. Without more, Plaintiff's allegations do not establish that Lipp or Kane Title owed fiduciary duties to Plaintiff, so Plaintiff's claim for breach must be dismissed.

### *D. Negligence*

"The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Tenaris Bay City Inc. v. Ellisor*, 718 S.W.3d 193, 197 (Tex. 2025). "Proximate cause has two elements: (1) cause in fact, and (2) foreseeability." *Id.*

Plaintiff alleges that Defendants owed a duty as escrow holders and breached that duty by releasing Plaintiff's funds to Schutze "less than an hour after receiving the funds" and "without asking Mr. Mizrahi a single question." Pl.'s Third Am. Compl. ¶ 82. Plaintiff alleges that it suffered damage when Schutze then "stole and converted those funds for his own personal use." *Id.* ¶ 37. Plaintiff's allegations are insufficient to show that Lipp or Kane Title owed it duties as an escrow holder. *See supra* Part B. But regardless of any duty Defendants may have owed Plaintiff, Plaintiff's allegations are also insufficient to establish proximate cause. Plaintiff was harmed because Schutze allegedly deceived Plaintiff and stole Plaintiff's $3 million. *Id.* ¶ 93. Plaintiff does not plead that Lipp or Kane Title were involved in the deception. The logical conclusion is that they, too, were deceived by Schutze's scheme. In any event, nothing in the complaint suggests that, when Schutze emailed Lipp and requested a refund of the funds, *id.* ¶ 36, Defendants could reasonably foresee that complying with Schutze's request would lead to Schutze stealing the funds from people he had introduced as his "partners" just the day before. *Id.* ¶ 26. Plaintiff's negligence claim must therefore be dismissed.

### *E. Promissory Estoppel*

"The requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). To support a claim for promissory estoppel, the

promise must be "designedly made to influence the conduct of the promisee." *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965). Promissory estoppel allows the court to impose an equitable remedy when "injustice can be avoided only by enforcement of the promise." *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997). "Under Texas law, only reliance damages are recoverable for a promissory estoppel claim." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 865 (5th Cir. 1999).

Plaintiff alleges that the Defendants "made promises and assurances that they would hold Plaintiffs' [sic] funds in escrow and eventually return the funds to Plaintiff[]." Pl.'s Third Am. Compl. ¶ 85. Plaintiff does not specify whether the emails from Lipp contain those alleged promises or whether there were other communications by which Defendants made the alleged promises. If the former, Plaintiff's allegations fail as a matter of law because the emails contain no promises, only Lipp's opinion about the interpretation of a separate contract not at issue in this case. If the latter, the allegations lack sufficient facts to establish that Plaintiff's reliance on them was foreseeable. Plaintiff's claim for promissory estoppel must therefore be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants David Kane's and Kane Title LLC's Second Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 62] and Defendant Evan Lipp's Third Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 63]. This case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

SIGNED January 22, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**